UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

VICKI CONRAD, JOHN DLUGOLECKI, and
CONTACT PRESS IMAGES, INC.,

                        Plaintiffs,                      21-cv-03596 (PKC)

        -against-

                                                           OPINION AND ORDER
LATIDO MITU HOLDINGS, LLC
GODIGITAL MEDIA GROUP, and
MITU, INC.,

                        Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiffs Vicki Conrad, John Dlugolecki and Contact Press Images, Inc. ("CPI") bring claims against defendants Latido Mitu Holdings, LLC ("LMH"), GoDigital Media Group ("GDMG") and Mitu, Inc. under the Copyright Act of 1976, 17 U.S.C. § 101 et seq. (the "Copyright Act"), alleging willful infringement of plaintiffs' registered copyrights. LMH and GDMG now move to dismiss the case for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., and for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P. In the alternative, LMH and GDMG move for a transfer of venue to the Central District of California under 28 U.S.C. § 1404(a).

        For the reasons explained, the Court will grant the motion to transfer the action to the Central District of California.

BACKGROUND

        According to the Amended Complaint, plaintiffs Conrad and Dlugolecki are photographers who are the creators and duly registered copyright owners of certain photos of Meghan Markle taken around December 1997 and December 1998 (the "Markle Photos"). (Doc

13 (Am. Compl.) ¶¶ 14-17; Id. Ex. A-D.)  In the late 1990s, Dlugolecki, as a professional photographer with an ongoing business relationship with Immaculate Heart High School ("IHHS") in Los Angeles, created photographs for the school's yearbooks that included images of Ms. Markle, who was an IHHS student at that time.  (Id. ¶ 5.)  Dlugolecki is the copyright owner of these photos.  (Id.)  Conrad, a non-professional photographer, often accompanied Dlugolecki, her husband, on these photoshoots for IHHS and created photos of her own, of which she is the copyright owner.  (Id. ¶ 4.)  Plaintiff CPI is a New York corporation based in New York City,[1] and is the exclusive agency for Conrad's and Dlugolecki's photos at issue.[2]  (Id. ¶ 6.)

Plaintiffs allege that in March 2020, LMH and GDMG acquired the website wearemitu.com from Mitu, Inc. and operated the website in December 2020, when it prominently reproduced and displayed the Markle Photos without the plaintiffs' knowledge or authorization or any legal right or license to do so.  (Id. ¶¶ 7, 18-20.)  Plaintiffs claim that LMH and GDMG's unauthorized displays of the Markle Photos constitute willful infringement of Conrad and Dlugolecki's exclusive rights to display them.

DISCUSSION

I.      Personal Jurisdiction

    A.      Rule 12(b)(2) Standard

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., plaintiffs bear the burden of demonstrating the court's personal jurisdiction over the

---

[1] The Amended Complaint does not identify the county within New York City in which CPI is "based," and thus the Court cannot determine whether it is in the Southern District of New York or the Eastern District of New York.  The distinction is unnecessary to the Court's decision on the motions.

[2] While the Memorandum of Understanding between Dlugolecki and CPI does not mention Conrad by name (Doc 18 (Conrad Decl.) Ex. A.), it was the plaintiffs' understanding that the engagement between Dlugolecki and CPI also included and bound Conrad, and applied to both Conrad's and Dlugolecki's separate photos of Meghan Markle. (Doc 20 (Smith Decl.) ¶¶ 4-5, 7; Doc 19 (Dlugolecki Decl.) ¶¶ 5, 7; Doc 18 (Conrad Decl.) ¶¶ 5, 7.).

defendants.  Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34-35 (2d Cir. 2010).  The complaint's allegations are assumed to be true, and plaintiffs need only make a prima facie showing of personal jurisdiction.  Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 85 (2d Cir. 2013) (per curiam).

Courts construe any pleadings and affidavits in the light most favorable to the plaintiffs and resolve all doubts in plaintiffs' favor.  Id. at 85.  However, courts should "not draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation."  In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (quotation marks omitted).  A court has "considerable procedural leeway" on a Rule 12(b)(2) motion and may decide it on affidavits alone, permit discovery in aid of the motion, or conduct an evidentiary hearing.  Dorchester, 722 F.3d at 84.

Personal jurisdiction may be exercised over any defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  Rule 4(k)(1)(A), Fed. R. Civ. P.  As a threshold matter, "[i]n a federal question case, where the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process."  Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 23 (2d Cir. 2004).  Because the "Copyright Act, 17 U.S.C. § 101 et seq., does not provide for national service of process," Fort Knox Music Inc. v. Baptiste, 203 F.3d 193, 196 (2d Cir. 2000), New York's long-arm statute, N.Y. C.P.L.R. § 302(a), governs the instant action.  If a plaintiff establishes a factual predicate for jurisdiction under the laws of the forum state—here, New York—the court must then consider whether the exercise of jurisdiction is consistent with due process.  Walden v. Fiore, 571 U.S. 277, 283 (2014).

Because plaintiffs do not allege general personal jurisdiction over defendants LMH and GDMG (Doc 22 at 10), the Court focuses only on the issue of exercising specific personal jurisdiction over LMH and GDMG under New York's long-arm statute.  "Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (quotation marks and alteration omitted).

Plaintiffs first argue that LMH and GDMG satisfy the "transacts business" requirement of N.Y. C.P.L.R. § 302(a)(1) because LMH and GDMG maintain a highly commercial and interactive website, proclaim to have operations in New York, have formally registered to do business in New York, and specifically targeted New York in their videos. Second, plaintiffs contend that because plaintiff CPI was within the state of New York, and LMH and GDMG regularly conduct business in New York, plaintiffs may avail themselves N.Y. C.P.L.R. § 302(a)(3), which applies to defendants who commit a tortious act outside New York that causes injury to a person or property within New York.  In response, LMH and GDMG primarily argue that (1) the cause of action here does not arise from California-based LMH and GDMG's business transacted within the state of New York, and (2) the cause of action here does not involve injury to any person or property in the state of New York.

B.   Arising From the Transaction of Business in New York

New York's long-arm statute provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state . . . ."

N.Y. C.P.L.R. § 302(a)(1).  The cause of action, however, must also "aris[e] from" the transaction of business within the state.  Id.

In other words, "[t]o determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York, and if so, (2) whether this cause of action 'aris[es] from' such a business transaction." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (citing Deutsche Bank Sec., Inc. v. Mont. Bd. Of Invs., 7 N.Y.3d 65, 71 (2006)).  "By this 'single act statute . . . proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" Deutsche Bank Sec., Inc. v. Mont. Bd. Of Invs., 7 N.Y.3d 65, 71 (2006) (quoting Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988)).

        i.        Whether LMH and GDMG Transact Business in New York

A defendant "transacts business" in New York for purposes of section 302(a)(1) when it "purposefully avails itself of the privilege of conducting activities within New York." Ehrenfeld v. Bin Mahfouz, 9 N.Y.3d 501, 508 (2007) (alteration omitted).  In determining whether a defendant has transacted business in a purposeful way, "[c]ourts look to the totality of the defendant's activities within the forum." Walker, 490 F.3d at 246 (quotation marks and citations omitted).

As relevant here, for purposes of determining whether a defendant "transacts business" under N.Y. C.P.L.R. § 302(a)(1), "[p]assive websites . . . which merely impart information without permitting a business transaction, are generally insufficient to establish personal jurisdiction." Paterno v. Laser Spine Inst., 24 N.Y.3d 370, 377 (2014) (collecting

cases). It is unclear, however, whether an interactive website facilitating commercial transactions with New York consumers is independently sufficient to satisfy the "transacts business" requirement. The New York Court of Appeals has not ruled on this issue, but other appellate courts in New York have treated an interactive website that facilitates commercial transactions as weighing in favor of—although not independently establishing—the requisite business transaction. See, e.g., Archer-Vail v. LHV Precast, Inc., 168 A.D.3d 1257, 1261-62 (3d Dep't 2019) (citing the defendant's maintenance of "an interactive website, which marketed and made its products available to New York customers," as one of the factors in holding that the plaintiffs provided a "sufficient start" to warrant further jurisdictional discovery); James v. iFinex, Inc., 185 A.D.3d 22, 29 (1st Dep't 2020) (quoting Archer-Vail 168 A.D.3d at 1261-62); Mejia-Haffner v. Killington, Ltd., 119 A.D.3d 912, 915 (2d Dep't 2014) (noting that although the defendant allegedly maintained a "website through which a person in New York could purchase services and the alleged tort that occurred," there were insufficient allegations to hold motion at issue in abeyance for jurisdictional discovery).

      Here, plaintiffs submit that the website at issue, wearemitu.com, is a "wholly interactive patently commercial profit-seeking business enterprise that directly sells through the site all manner of merchandise," (Am. Compl. ¶ 12), which "constantly solicits and consummates commercial transactions with people through the United States, including New York." (Doc 22 at 8.) Construing this allegation in the light most favorable to the plaintiffs, the Court concludes that wearemitu.com is an interactive website that allows commercial transactions of merchandise with New York consumers.[3] Coupled with plaintiffs' additional

---

[3] The homepage of wearemitu.com, cited by plaintiffs in their pleadings, is titled "mitú," displays a "SHOP" button, which redirects the visitor to mitushop.com, titled "mitú shop." See MITÚ, https://wearemitu.com (last visited Dec. 1, 2021).

allegations that LMH and GDMG are formally registered to do business in New York, and that mitú has "operations in New York," (Am. Compl. ¶¶ 8, 11), the Court further concludes that these allegations satisfy the first "transacts business" prong under N.Y. C.P.L.R. § 301(a)(1). See Paterno, 24 N.Y.3d at 377 ("[W]here the non-domiciliary seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship, a non-domiciliary can be said to transact business within the meaning of CPLR 302(a)(1).")

       ii.  Whether the Cause of Action Arises from the New York Transactions

Plaintiffs, however, fail to plead facts that satisfy the second prong of the long-arm statute analysis under N.Y. C.P.L.R. § 302(a)(1). While plaintiffs allege that defendants LMH and GDMG transact business in New York, they fail to show a "substantial relationship between the transaction and the claim asserted." Deutsche Bank, 71 N.Y.2d at 467. The cause of action here—the unauthorized display of the Markle Photos around December 2020—is too far removed from LMH and GDMG's alleged transactions of business in New York, such as selling "all manner of merchandise" on their website, (Am. Compl. ¶ 12), through which they seek to "connect brands, content buyers, and creators to the massive community of Latino consumers in America." (Id. ¶ 11.) Similarly, the cause of action appears to have little to do with LMH and GDMG's alleged registration to do business in New York or their operations in New York.

The Amended Complaint's internet citations purporting to portray LMH and GDMG's operations in New York have zero relation to the Markle Photos. The first cited video, titled "We see you New York," portrays two individuals as they purchase affordable outfits from thrift stores in Brooklyn, New York. (Am. Compl. ¶ 10.) The second Facebook video, titled "New York got nothin' on LA tacos, yo," portrays a Los Angeles resident who "swaps places"

with his New York-based friend and tries sushi, Puerto Rican rum, and Puerto Rican food, but for some reason, not tacos. Id. Plaintiffs' remaining citations, such as a Tweet about an avocado bar in New York, also fail to establish an "articulable nexus" between the alleged copyright infringement as to the Markle Photos and LMH and GDMG's business transactions in New York. McGowan v. Smith, 52 N.Y.2d 268, 272 (1981).

Accordingly, the Court concludes that plaintiffs have failed to allege a sufficient factual basis for this Court to exercise specific personal jurisdiction over defendants LMH and GDMG under N.Y. C.P.L.R. § 302(a)(1).

    C.    A Tortious Act Causing Injury Within the State

As relevant here, N.Y. C.P.L.R. § 302(a)(3) provides that:

> [A] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: . . . (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

Id. "In copyright infringement cases involving the uploading of a copyrighted [work] onto the internet, . . . the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. 302(a)(3) . . . . is the location of the copyright holder." Penguin Group (USA) Inc. v. Am. Buddha, 16 N.Y.3d 295, 301-02 (2011). In so holding, the New York Court of Appeals reasoned in part that "although it may make sense in traditional commercial tort cases to equate a plaintiff's injury with the place where its business is lost or threatened, it is illogical to extend that concept to online copyright infringement cases where the place of uploading is

8

inconsequential and it is difficult, if not impossible, to correlate lost sales to a particular geographic area." Id. at 305.  Here, the copyright holders Conrad and Dlugolecki are located in California, not New York.  In other words, the "situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. 302(a)(3)" is not New York but California, "the location of the copyright holder[s]." American Buddha, 16 N.Y.3d at 302.

Accordingly, the Court concludes that plaintiffs have failed to allege a sufficient factual basis for this Court to exercise specific personal jurisdiction over defendants LMH and GDMG under N.Y. C.P.L.R. § 302(a)(3).

D.   Due Process

While failure to satisfy the New York long-arm statute is sufficient to deny the exercise of specific personal jurisdiction here, the Court finds that even if it were to proceed to the due process inquiry, it would be improper for the Court to exercise personal jurisdiction over LMH and GDMG.

"Pursuant to the due process clauses of the Fifth and Fourteenth Amendments, there are two parts to the due process test for personal jurisdiction . . . the minimum contacts inquiry and the reasonableness inquiry." Waldman v. Palestine Liberation Org., 835 F.3d 317, 331 (2d Cir. 2016) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945) and Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002)).  "The minimum contacts inquiry requires that the court determine whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction" and "the reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice."  Id. (citations and internal quotation marks omitted).

Under the narrower specific jurisdiction, a district court may hear certain claims against a defendant where that defendant "has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citations and internal quotation marks omitted). For the reasons explained above, the alleged "suit-related contact" between LMH and GDMG and the state of New York is insufficient to satisfy the minimum contacts inquiry. Waldman, 835 F.3d at 335.

Because the Court holds that plaintiffs have not met the "threshold showing of the minimum contacts" to support specific jurisdiction, it need not address the reasonableness prong of the due process inquiry. Bank Brussels Lambert, 305 F.3d at 129; see also Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996) ("if the constitutionally necessary first-tier minimum is lacking, the inquiry ends") (quoting Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465 (1st Cir. 1990)).

Finally, although plaintiffs do not argue this point, the Amended Complaint is also insufficient under the "effects test," a "theory of personal jurisdiction where [] the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff." Licci ex rel. Licci, 732 F.3d 161, 173 (2d Cir. 2013) (citing Calder v. Jones, 465 U.S. 783, 789 (1984)). Although "[i]n such circumstances, the exercise of personal jurisdiction may be constitutionally permissible if the defendant expressly aimed its conduct at the forum," id., mere "'foreseeability of causing injury in another State,' however, will not suffice," Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 87 (2d Cir. 2018) (quoting Burger King Corp., 471 U.S. at 474). Based on the facts and misconduct alleged, the Court concludes that defendants

LMH and GDMG did not expressly aim to cause injury within the state of New York, foreclosing personal jurisdiction alternatively under the "effects test."

      E.      Jurisdictional Discovery

Plaintiffs argue that even if they have not made out a prima facie showing of personal jurisdiction, the Court should permit "cabined jurisdictional discovery" limited to the "a) the revenues the defendants derive from their business in New York; b) the nature, extent, and revenues derived by the defendants from their self-proclaimed 'operations' in New York; and c) the nature, extent, and revenues derived by the defendants from their specific actions and activities that target customers and potential customers in New York." (Doc 22 at 13.) The "threshold failure[s]" to establish specific personal jurisdiction noted above will not be cured by this requested discovery. Lehigh Val. Indus., Inc. v. Birenbaum, 527 F.2d 87, 94 (2d Cir. 1975). Accordingly, the Court denies plaintiffs' request for jurisdictional discovery.

II.      Failure to State a Claim

Because the Court finds that it cannot exercise personal jurisdiction over defendants LMH and GDMG, it is unnecessary to resolve the issue of whether plaintiffs have failed to state a claim to relief under Rule 12(b)(6), Fed. R. Civ. P., and the Court does not do so here.

III.      Transfer

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Even if a district court finds that it lacks personal jurisdiction over the defendants, a district court may still transfer a civil action to any other district in which it might have been brought for the convenience of parties and witnesses and in

11

the interest of justice.  See Fort Knox Music Inc. v. Baptiste, 257 F.3d 108, 112 (2d Cir. 2001) (quoting 28 U.S.C. § 1404(a)).  Defendants LMH and GDMG specifically request a transfer to the Central District of California, where they are organized and have their principal places of businesses, and where plaintiffs also "apparently reside."  (Doc 14 at 14.)

    The first question is whether this action "might have been brought" in the Central District of California.  28 U.S.C. § 1404(a).  The Central District of California has subject matter jurisdiction over federal Copyright Act claims, and LMH and GDMG are based in Marina del Rey of Los Angeles County, within the Central District of California.  (Doc 14 at 16.)  Therefore, this action could have been brought in the proposed transferee court.

    Next, the Court considers the following factors in deciding whether to transfer under section 1404(a): "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties."  D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006) (quotation omitted).  While the plaintiff's choice of forum is normally given great weight, id. at 107, here, the plaintiff's choice of forum is jurisdictionally improper and the other factors—except for the relative means of the parties—all counsel strongly in favor of a transfer to the Central District of California.

    First and foremost, Conrad, Dlugolecki, LMH, and GDMG are all based in California.  (Am. Compl. ¶ 10; Doc 15 ¶¶ 4, 7; Doc 18 ¶ 9.)  Indeed, as LMH and GDMG point out, the copyright registrations attached to the Amended Complaint as exhibits list Burbank, California in Los Angeles County as the city of residence for both Conrad and Dlugolecki.  (Doc 14 at 16 (citing Am. Compl. Ex. B & D.)  If so—and plaintiffs do not dispute their Burbank

12

residency in their response—except for plaintiff CPI, every other party resides in the Central District of California.

This would mean that the convenience of potential witnesses, the location of relevant documents and relative ease of access to sources of proof, the convenience of parties, the locus of operative facts, and the availability of process to compel the attendance of unwilling witnesses, all favor a transfer to the Central District of California.  Therefore, based on a totality of the circumstances, while LMH and GDMG are corporations likely with greater means than plaintiffs, the factors on balance, and thus the "convenience of the parties and witnesses and . . . the interest of justice" weigh in favor of a transfer to the Central District of California.  28 U.S.C. § 1404(a).  The Court further notes that the Central District of California is equally familiar with copyright law and will be able to efficiently preside over and try the claims at issue.  See MasterObjects, Inc. v. Amazon.com, Inc., 2020 WL 6075528, at *1 (S.D.N.Y. Oct. 15, 2020) (citing to district court cases which, in addition to the seven factors highlighted by the Second Circuit, also examined the transferee forum's "familiarity with the governing law," and "trial efficiency and the interests of justice, based on the totality of the circumstances").

CONCLUSION

For these reasons, LMH and GDMG's motion to transfer venue is GRANTED.  LMH and GDMG's motion to dismiss for lack of personal jurisdiction is DENIED without prejudice.  LMH and GDMG's motion to dismiss for failure to state a claim is DENIED without prejudice.  The Clerk is directed to terminate the motions (Doc 13), transfer the action to the Central District of California and administratively close the docket in this District.

SO ORDERED.

*P. Kevin Castel*
P. Kevin Castel
United States District Judge

Dated: New York, New York
December 10, 2021